UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

JAMES HOSKINS,

       Plaintiff,

       v.                              Case No. 03-C-0334

CITY OF MILWAUKEE,
OFFICERS DAVID WILHELM (EMPLOYEE ID #59963),
TAMMY TONDU (EMPLOYEE ID #69848),
KEVIN CLARK (EMPLOYEE ID #65708),
AND PHILLIPS #59963,

       Defendants.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DISMISSING CASE

       James Hoskins sues the City of Milwaukee and four of its police officers for alleged violations of his civil rights relating to his arrest. All defendants move for summary judgment.

TIMELINESS OF MOTION

       Hoskins contends that the defendants' motion for summary judgment was untimely because he did not receive the motion and supporting papers on December 1, 2005, as required, but rather on December 2 through December 7, 2005. However, in an order dated November 4, 2005, this court set a deadline of December 1, 2005, for the *filing* of motions for summary judgment. The docket reflects that defendants' motion, brief, proposed findings of fact, and all but one affidavit were filed with the court on December 1. One affidavit was filed on December 2, due to a clerical error by defense counsel's staff regarding attaching the correct document to a docket entry. (*See* Smokowicz Letter filed 12/2/05;

docket entries 85, 90, 91.) The one-day tardiness of that affidavit could not have prejudiced Hoskins and does not justify striking the defendants' motion. Further, Hoskins received the documents shortly after filing. Therefore, his objection to consideration of the motion based on untimeliness is overruled.

## DISCOVERY VIOLATIONS

This court's November 4, 2005, order, set a deadline of November 17, 2005, for the filing of certain responses to Hoskins' interrogatories. In a "Memorandum in Opposition to defendants responce [sic] to discovery demand" filed November 22, 2005, as docket number 77, Hoskins notes that only defendants Tondu and Wilhelm responded on time. According to Hoskins, neither defendant Clark nor defendant Phillips responded at all. Consequently, Hoskins asks that the court impose an unspecified sanction on these defendants.

In response to the summary judgment motion, Hoskins did not cite Fed. R. Civ. P. 56(f) or suggest that responses to the interrogatories by Phillips and Clark were necessary for him to oppose the motion. Further, the interrogatories question the defendants' actions regarding the arrest of Hoskins following a domestic violence report, and the undisputed facts show that defendants Phillips and Clark were not involved in the investigation of the incident or in Hoskins' arrest. Therefore, the court will not sanction defendants Phillips or Clark by striking their motion for summary judgment or in any other way.

## SUMMARY JUDGMENT

The court may grant summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a

2

matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a genuine issue of material fact for the case to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

UNDISPUTED FACTS

In response to the defendants' proposed findings of fact, Hoskins stated that many were undisputed. Therefore, unless otherwise noted, a citation to one of the defendants' proposed findings incorporates Hoskins' response indicating his agreement.

Defendant Tammy Tondu has been employed as a police officer in the City of Milwaukee Police Department since April 2002. (Defs.' Proposed Findings of Fact ("DPFOF")

3

¶ 1.) Defendant David Wilhelm has been employed as a police officer in the City of Milwaukee Police Department since August 1992. (DPFOF ¶ 16.) Tondu and Wilhelm were working as partners in the early morning hours of September 22, 2002. (DPFOF ¶¶ 2, 3, 17, 18.) That morning, Tondu and Wilhelm, along with City of Milwaukee Police Officer Kevin Clark, responded to 2812 West Cherry Street at approximately 2:30 a.m. for a domestic violence/battery complaint. (DPFOF ¶ 4, 19.)

After arriving at 2812 West Cherry Street, Tondu spoke to a woman who identified herself as Theresa Turner. (DPFOF ¶ 7.) Turner was being treated at the scene by ambulance attendants. (DPFOF ¶ 8.) Turner stated that before she called police Hoskins had become angry because she had gone out for a few hours and he had slapped and punched her on the left side of her face. (DPFOF ¶ 9.[1]) Further, Turner told Tondu that Hoskins had pushed her to the ground and while straddling her body began choking her, causing her pain. (DPFOF ¶ 10.[2]) Additionally, Turner informed Tondu that she and Hoskins previously lived together as boyfriend and girlfriend for three years. (DPFOF ¶ 14.)

While at the scene, Tondu observed bruising and lacerations around Turner's neck and minor scratches to the back of Hoskins' neck. (DPFOF ¶¶ 11,[3] 12.) Turner advised

---

[1]Hoskins objects, stating that he never hit, punched, or slapped Turner, but only extended his arms in his own defense to keep Turner from assaulting him. (Pl.'s Resp. to Defs.' Proposed Findings of Fact ¶ 9.) However, Hoskins' response is not on point. How the altercation actually occurred does not contradict what Tondu says Turner told her. Nothing contradicts Tondu's evidence regarding what Turner said.

[2]Hoskins agrees that an altercation occurred between him and Turner, but objects by saying that Turner was the aggressor. (Pl.'s Resp. to Defs.' Proposed Findings of Fact ¶ 10.) Again, the actual facts of the altercation do not draw into question what Tondu was told by Turner.

[3]Again, Hoskins objects and responds by stating that he never hit Turner but merely extended his arms in self-defense. (Pl.'s Resp. to Defs.' Proposed Findings of Fact ¶ 11.) But again, the response is not on point. Whether Turner was the aggressor does not contradict Tondu's observation of bruising and lacerations around Turner's neck.

4

Tondu that she made the marks on Hoskins' neck in defending herself while Hoskins was straddling and choking her. (DPFOF ¶ 13.[4])

Wilhelm spoke to Hoskins at the scene. (DPFOF ¶ 20.) Wilhelm observed scratches on the back of Hoskins' neck and certain scratches or marks on Turner. (DPFOF ¶ 23.) Hoskins stated that he and his girlfriend, Turner, had gotten into a fight. (DPFOF ¶ 21.) Further, Hoskins stated that Turner must have called the police because he did not and he did not want the police there. (DPFOF ¶ 22.)

Hoskins admits he talked with officers regarding the incident. However, in his affidavit he states that he said he did not want police there only "when [he] realize[d] that they were not going to take my account into consideration." (Hoskins Aff. ¶ 11.)

Photographs were taken of Turner and Hoskins while Wilhelm was at the scene. (DPFOF ¶ 25.) The photographs show scratches on the face and neck of Turner and face and neck of Hoskins. (Wilhelm Affs. filed 10/26/04 and 12/2/05,[5] Exs.)

As a consequence of the investigation, Hoskins was arrested at the scene. (DPFOF ¶ 15.)

---

[4]Hoskins objects by stating that "any reasonable, person can [see] that a person being attack[ed] from rear was not the ag[g]ressor." (Pl.'s Resp. to Defs.' Proposed Findings of Fact ¶ 13.) This is argument, not a responsive fact. Further, similar to Hoskins' other objections, it fails to refute Tondu's evidence regarding what Turner told her.

[5]The photographs attached to the December 2, 2005, affidavit are black and white, while the photographs attached to Wilhelm's previous affidavit, filed October 26, 2004, are in color and of better quality.

5

Officer Clark stood by at the scene as a back-up officer, providing security; he had no involvement in the collection of evidence, taking of statements, or decision to arrest Hoskins. (DPFOF ¶ 6.[6])

No City of Milwaukee police officer with the last name of Phillips was ever present while Tondu was at 2812 West Cherry Street and prior to Hoskins' arrest. (DPFOF ¶ 5.[7])

DISCUSSION

Hoskins sues the defendants under 42 U.S.C. § 1983. (Am. Compl. at 1.) To establish a § 1983 claim, a plaintiff must prove (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon him by a person or persons acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). Here, no one disputes that the defendants are a governmental subdivision and its police officers, and they do not dispute for purposes of this motion that they acted under color of state law.

In his Amended Complaint, Hoskins asserts that the defendant officers (1) violated his due process rights and subjected him to false imprisonment in violation of the

---

[6]Hoskins objects to this proposed finding of fact, but his response creates no question of fact. Hoskins states in response that there were more than two officers present at 2812 West Cherry Street on the night of his arrest. This response is not backed up by any actual evidence in Hoskins' affidavit and is *consistent* with Officer Clark's presence. Moreover, that more than two officers were there in no way refutes defendants' evidence as to what Officer Clark's role was.

[7]Hoskins objects to this proposed finding, stating that the name "Philliphs" appeared on the police report and that it is therefore reasonable to believe he was present and contributed to the arrest. (Pl.'s Resp. to Defs.' Proposed Findings of Fact ¶ 5.) The police report is inadmissible hearsay, as it is a prior statement offered for its truth. *See* Fed. R. Evid. 801(c). Moreover, Hoskins failed to proffer the police report as evidence. (In reply, defendants attempted to present the police report with the affidavit of Brian Yourich, and argued that Hoskins was misreading Wilhelm's signature. However, no police report was actually attached to Yourich's affidavit.) Therefore, the court has no police report before it to substantiate Hoskins' argument. Thus, the court is left with Tondu's statement that no Phillips was ever present at the scene.

6

Fourth Amendment (Am. Compl. at 1), (2) discriminated against him on the basis of gender in violation of his right to equal protection under the Fourteenth Amendment (*id.*), and (3) subjected him to conditions of confinement in violation of the Eighth Amendment's ban on cruel and unusual punishment (*id.* at 2).

Defendants argue that no evidence indicates that defendant Phillips was involved in the arrest at Hoskins' residence or that defendant Clark did anything other than stand-by as back-up. Further, defendants maintain that Officers Tondu and Wilhelm are entitled to qualified immunity, protecting them from suit. Within that argument, relating to the first element of a qualified immunity defense, they challenge whether Hoskins was even deprived of any constitutional right in the first place.

A.  Claims Against Phillips and Clark

To recover under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). An official satisfies the personal responsibility requirement of § 1983 if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. *Id.* That is, the official must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. *Id.*

The undisputed evidence shows that no officer named Phillips was involved in the September 22, 2002, police response at 2812 West Cherry Street. Therefore, summary judgment on all claims must be granted in defendant Phillips' favor.

The undisputed evidence also shows that although defendant Clark responded to 2812 West Cherry Street with Tondu and Wilhelm, he stood by as back-up or security and did not participate in the collection of evidence, taking of statements, or decision to arrest

7

Hoskins. Thus, no constitutional deprivation could have occurred at his direction or through his facilitation. Further, no constitutional violation ever occurred, so Clark could not have known about one and condoned or ignored it. Thus, summary judgment on all claims must be granted in Clark's favor.

B.   Claims Against Tondu and Wilhelm

The doctrine of qualified immunity shield government officials against suits arising out of their exercise of discretionary functions in certain situations. *See Jones v. Wilhelm*, 425 F.3d 455, 460 (7th Cir. 2005). Qualified immunity involves a two-part test: (1) whether a defendant's alleged actions constitute a violation of some constitutional right, and (2) whether the implicated right was clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Jones*, 425 F.3d at 461. An officer is entitled to qualified immunity unless the court answers both questions in the affirmative. *Saucier*, 533 U.S. at 201; *Jones*, 425 F.3d at 460.

The undisputed evidence establishes that Hoskins loses this case at the first element, as his constitutional rights were not violated.

1.   Claim of Unlawful Arrest or False Imprisonment

The constitutionality of a warrantless arrest for a criminal offense turns on the existence of probable cause for the arrest. *Woods v. City of Chicago*, 234 F.3d 979, 992 (7th Cir. 2000). The existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution. *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989).

Probable cause exists if the facts and circumstances communicated to the arresting officer would warrant a prudent person to believe that the suspect has committed

or is committing an offense. *Woods*, 234 F.3d at 987, 996. Courts evaluate probable cause "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer." *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992) (emphasis deleted). An identification or report from a single, credible victim or eyewitness can establish probable cause. *Woods*, 234 F.3d at 996. When an officer receives information from some person, whom it seems reasonable to believe is telling the truth, the officer has probable cause to effectuate an arrest. *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998). Probable cause does not depend on the witness turning out to have been right; instead, it is what the police know, not whether they know the truth, that matters. *Id.*

Once probable cause has been established, an officer has no constitutional duty to conduct further investigation before making an arrest. *Woods*, 234 F.3d at 997. That an arrested suspect is not charged with or convicted of any offense does not negate the existence of probable cause. *See Kelley*, 149 F.3d at 647; *Humphrey v. Staszak*, 148 F.3d 719, 728 (7th Cir. 1998).

Battery is a class A misdemeanor in Wisconsin. Wis. Stat. § 940.19(1). It consists of "bodily harm to another by an act done with intent to cause bodily harm to that person or another without the consent of the person so harmed." *Id.* "Bodily harm" means "physical pain or injury, illness, or any impairment of physical condition." Wis. Stat. § 939.22(4).

Summary judgment must be granted on Hoskins' claim of unlawful arrest or false imprisonment because the undisputed facts show that the officers committed no violation of the Fourth Amendment in arresting him. The evidence establishes that Tondu and

9

Wilhelm knew Turner had called the police, and that Hoskins did not want the police there. Hoskins' reason for saying he did not want the police there is immaterial, as no evidence shows he related his reason to the officers. Further, the officers were told that Turner and Hoskins were or had been girlfriend and boyfriend and lived together for three years, and they saw that both Turner and Hoskins had scratches on their faces and necks. Turner told the officers that before she called police, Hoskins had become angry at her and had slapped and punched her, pushed her to the ground, and choked her, causing her pain. Turner also stated that Hoskins' injuries occurred while she was defending herself. No evidence presented by Hoskins suggests that he denied these allegations by Turner. Instead, he admitted that he and his girlfriend, Turner, had fought physically. Although Hoskins now says that Turner attacked him and that he responded only by extending his arms in self-defense, no evidence suggests that he told the officers that version of events.

Although Hoskins maintains that the police arrested him improperly at his home, there is evidence that the officers knew who owned the property. Regardless, the ownership of the house would not have had any effect on whether the officers had probable cause to arrest Hoskins.

Next, Hoskins argues that the scratches on the back of his neck support his claim that Turner attacked him, such that the officers should not have believed Turner. But again, Turner told the police that Hoskins attacked her and she harmed him in self-defense, and at the time Hoskins did not relate a contrary story. Moreover, Turner, not Hoskins, had called the police seeking their intervention, thereby supporting a reasonable belief that Turner's version of events was accurate. Hoskins does not sufficiently draw Turner's

10

credibility at the scene into question such that the officers could not have relied on her version of events as a basis for probable cause to arrest.

The facts known to an omniscient observer do not determine whether probable cause exists; only the facts known to the officers do. *Mahoney*, 976 F.2d at 1057. Based on the facts known to the officers at the scene, a reasonable person would have believed that Hoskins had committed battery against Turner. She called the police seeking protection, she said Hoskins had attacked her in anger for going out for a few hours, she admitted she had injured him h in self-defense, and the scratches and bruises on her supported her statements and established bodily harm. Hoskins did not deny Turner's statements nor tell the officers anything that suggested a different sequence of events. Instead, he said he did not want the police at the residence. Consequently, there was probable cause to arrest Hoskins for intentional bodily injury to Turner.

Finally, Hoskins contends that under state law the officers had to arrest both Turner and him. Whether officers violated any state law regarding arrests following domestic disputes has no bearing on whether Hoskins' federal constitutional rights were violated.

For these reasons, summary judgment will be granted in Tondu's and Wilhelm's favor on this claim.

2. Claim of an Equal Protection Violation

Hoskins asserts that the officers arrested him rather than Turner due to gender discrimination. The Fourteenth Amendment commands that no person shall be denied the "equal protection of the laws" by any state, which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne, Tex. v.*
11

*Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Gender-based discrimination can violate the equal protection clause. *Nanda v. Moss*, 412 F.3d 836, 844 (7th Cir. 2005).

To prevail on an equal protection claim, a plaintiff must prove that (1) the defendant treated him differently than another similarly situated person, (2) the defendant intentionally treated him differently because of his membership in a certain class, and (3) the difference does not satisfy the strict scrutiny, intermediate, or rational relation test as applicable. *See Smith v. City of Chicago*, Nos. 04-2755, 04-4009, ___ F.3d ___, ___, 2006 WL 2243308, *7 (7th Cir. Aug. 7, 2006); *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 950-51 (7th Cir. 2002); *see also City of Cleburne, Tex.*, 473 U.S. at 439-41 (discussing different standards of review depending on bases of classification).

Hoskins's case fails the first two elements. First, "similarly situated individuals must be very similar indeed." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004). But here the undisputed evidence establishes that Hoskins and Turner were not similarly situated such that treating them differently was improper. The evidence gathered by the officers at the scene – that Turner called the police, said Hoskins had attacked her physically, had physical injuries, and said Hoskins' injuries were caused by her in self defense; and that Hoskins did not contradict Turner's statements but instead admitted that a physical altercation occurred and said he did not want police there – meant that Turner and Hoskins were dissimilar. *See, e.g., Anderson v. Cass County, Mo.*, 367 F.3d 741, 743-44 (8th Cir. 2004) (holding that two bail bondsmen were dissimilar from a third for purposes of an equal protection claim regarding arrest, as the third was outside the residence where the first two were arrested while attempting to seize an individual and the individual claimed that the

12

two arrested bondsmen, but not the third, had struck her in the face while she was handcuffed).

Second, no evidence supports Hoskins' argument that the officers treated him differently because of gender as opposed to the evidence before them suggesting that Turner was the victim and Hoskins the aggressor. Hoskins presents no evidence at all on the matter, only speculation. Again, whether the officers were supposed to arrest both under state law has no bearing on the constitutional questions in this case. For these reasons, summary judgment will be granted on this claim.

       3.     Claim of Cruel and Unusual Punishment

The Eighth Amendment's ban on cruel and unusual punishment applies only to those who have been convicted. *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). A pretrial detainee's constitutional rights derive from the Fourteenth Amendment's due process clause. *Id.* But even considering Hoskins' claim under the due process clause, as the standards are generally the same, *id.*, Hoskins loses. He fails to put forth any facts regarding his treatment by police once in custody; nothing indicates that any incident occurred during Hoskins' arrest or subsequent custody which could be considered cruel or unusual punishment or a parallel violation of due process. Thus, summary judgment must be granted on Hoskins' Eighth Amendment claim.

C.     Claims Against the City of Milwaukee

In their motion for summary judgment and supporting briefs defendants fail to address specifically the claims against the City of Milwaukee.

Local governments may be sued under § 1983 for unconstitutional injury caused by or implementing that government's policy, custom, or practice. *Monell v. Dep't of Social*

13

*Servs.*, 436 U.S. 658, 691-92 (1978). Obviously, there must be an unconstitutional injury before the municipality can be held liable for having a policy that allows it.

As discussed above, Hoskins' arrest was lawful, and he has failed to establish any equal protection violation, Eighth Amendment violation or due process violation. Without question, the City of Milwaukee cannot be liable for having a policy that allowed an unconstitutional action, when no unconstitutional action has occurred. Thus, although Hoskins' claims against the City of Milwaukee were not specifically addressed by the defendants in their summary judgment materials, and the claims against the City are contingent on the issues that this court has addressed and resolved in defendants' favor, the court must conclude that Hoskins' claim against the City has no chance of success.

## CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the defendants' motion for summary judgment is granted and this case is dismissed.

Dated at Milwaukee, Wisconsin, this 31st day of August, 2006.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge